1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VINCENT PAUL ALFARO,                    Case No.  1:21-cv-00173-HBK

12            Plaintiff,                      ORDER DENYING PLAINTIFF'S MOTION
                                              FOR SUMMARY JUDGMENT, GRANTING
13        v.                                  DEFENDANT'S MOTION FOR SUMMARY
                                              JUDGMENT, AND AFFIRMING THE
14   KILOLO KIJAKAZI,                         DECISION OF THE COMMISSIONER OF
     COMMISSIONER OF SOCIAL                   SOCIAL SECURITY[1]
15   SECURITY,
                                              (Doc. Nos. 21, 26)
16            Defendant.

17

18

19        Vincent Paul Alfaro ("Plaintiff"), seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for

21   supplemental security income and disability insurance benefits under the Social Security Act.

22   (Doc. No. 1).  The matter is currently before the undersigned on the parties' briefs, which were

23   submitted without oral argument.  (Doc. Nos. 21, 26).  For the reasons set forth more fully below,

24   the Court denies Plaintiff's motion for summary judgment, grants Defendant's motion for

25   summary judgment, and affirms the Commissioner's decision.

26        ////

27

28   [1]  Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
     §636(c)(1).  (Doc. No. 31).

1

## I.     JURISDICTION

2          Plaintiff protectively filed for supplemental security income on May 2, 2017 and for

3     disability insurance benefits on May 1, 2017, alleging a disability onset date of July 16, 2016.

4     (AR 255-72).  Benefits were denied initially (AR 64-97, 138-43) and upon reconsideration (AR

5     100-35, 146-51).  Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on

6     May 6, 2020.  (AR 35-63).  Plaintiff testified at the hearing and was represented by counsel.

7     (*Id*.).  The ALJ denied benefits (AR 12-34) and the Appeals Council denied review (AR 1-6).

8     The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

9

## II.     BACKGROUND

10          The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's

11     decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are

12     summarized here.

13          Plaintiff was 60 years old at the time of the hearing.  (AR 55).  He graduated from high

14     school.  (AR 40).  He has a work history as a forklift operator, extractor machine operator,

15     shipping and receiving clerk, and farmworker.  (AR 41-47, 58).  Plaintiff testified that his first

16     stroke caused right-sided weakness, and his second stroke caused balance problems.  (AR 50).

17     He reported problems with memory, emotional issues, and foot drop if he walks too long.  (AR

18     51).  Plaintiff "loses grip" with his right hand but can lift 25 pounds at the most with his left arm.

19     (AR 49, 53).  He testified that he has pain on the left side of his back and left hip, "some pain" in

20     his left knee, and he uses a cane "as much as possible" but he is "pretty steady sometimes."  (AR

21     54-55).

22

## III.     STANDARD OF REVIEW

23          A district court's review of a final decision of the Commissioner of Social Security is

24     governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

25     Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

26     is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial

27     evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

28     conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

1    equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

2    citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

3    consider the entire record as a whole rather than searching for supporting evidence in isolation.

4    *Id.*

5    In reviewing a denial of benefits, a district court may not substitute its judgment for that of

6    the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

7    to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

8    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

9    harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

10   nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

11   decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

12   U.S. 396, 409-10 (2009).

13                    **IV.    SEQUENTIAL EVALUATION PROCESS**

14   A claimant must satisfy two conditions to be considered "disabled" within the meaning of

15   the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

16   activity by reason of any medically determinable physical or mental impairment which can be

17   expected to result in death or which has lasted or can be expected to last for a continuous period

18   of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the

19   claimant's impairment must be "of such severity that he is not only unable to do his previous

20   work[,] but cannot, considering his age, education, and work experience, engage in any other kind

21   of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A),

22   1382c(a)(3)(B).

23   The Commissioner has established a five-step sequential analysis to determine whether a

24   claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

25   At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§

26   404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity,"

27   the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b),

28   416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

2    two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

3    C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or

4    combination of impairments which significantly limits [his or her] physical or mental ability to do

5    basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

6    If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner

7    must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

8    At step three, the Commissioner compares the claimant's impairment to severe

9    impairments recognized by the Commissioner to be so severe as to preclude a person from

10   engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If

11   the impairment is as severe or more severe than one of the enumerated impairments, the

12   Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d),

13   416.920(d).

14   If the severity of the claimant's impairment does not meet or exceed the severity of the

15   enumerated impairments, the Commissioner must pause to assess the claimant's "residual

16   functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

17   ability to perform physical and mental work activities on a sustained basis despite his or her

18   limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth

19   steps of the analysis.

20   At step four, the Commissioner considers whether, in view of the claimant's RFC, the

21   claimant is capable of performing work that he or she has performed in the past (past relevant

22   work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of

23   performing past relevant work, the Commissioner must find that the claimant is not disabled.  20

24   C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the

25   analysis proceeds to step five.

26   At step five, the Commissioner considers whether, in view of the claimant's RFC, the

27   claimant is capable of performing other work in the national economy.  20 C.F.R. §§

28   404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also

4

1    consider vocational factors such as the claimant's age, education, and past work experience.  20

2    C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other

3    work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

4    404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis

5    concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20

6    C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

7          The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180

8    F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

9    Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

10   work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2),

11   416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

12                          **V.     ALJ'S FINDINGS**

13         At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity

14   since July 16, 2016, the alleged onset date.  (AR 17).  At step two, the ALJ found that Plaintiff

15   has the following severe impairments: status post two strokes/cerebral infarctions, hypertension,

16   right rotator cuff tear, status post left knee arthroscopy, diabetes mellitus with peripheral

17   neuropathy, and obesity.  (AR 17).  At step three, the ALJ found that Plaintiff does not have an

18   impairment or combination of impairments that meets or medically equals the severity of a listed

19   impairment.  (AR 18).  The ALJ then found that Plaintiff has the RFC to

20               perform light work as defined in 20 CFR 404.1567(b) and
                 416.967(b).  He can never climb ladders, ropes, or scaffolds, or be
21               exposed to unprotected heights or hazardous work environments;
                 should avoid uneven terrain in the workplace; can occasionally climb
22               stairs or ramps; can occasionally balance, stoop, crouch, kneel, or
                 crawl; can occasionally reach overhead on the right; must be able to
23               sit for five minutes every 30 minutes while remaining on-task; would
                 be off task five percent of the workday; and needs to avoid operating
24               foot controls.

25   (AR 19-20).  At step four, the ALJ found that Plaintiff is unable to perform past relevant work.

26   (AR 26).  At step five, the ALJ found that considering Plaintiff's age, education, work

27   experience, and RFC, there are jobs that exist in significant numbers in the national economy that

28   Plaintiff can perform, including routing clerk, mail clerk, and folding machine operator.  (AR 27).

1    On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the

2    Social Security Act, from July 16, 2016, through the date of the decision.  (AR 28).

**VI.    ISSUES**

4    Plaintiff seeks judicial review of the Commissioner's final decision denying him

5    supplemental security income benefits under Title XVI of the Social Security Act and disability

6    insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the

7    following issues for this Court's review:

8    1.  Whether the ALJ properly weighed the medical opinion evidence; and

9    2.  Whether the ALJ properly considered Plaintiff's symptom claims.

10   (Doc. No. 21 at 19-39).

**VII.    DISCUSSION**

12   **A.  Medical Opinions**

13   For claims filed on or after March 27, 2017, new regulations apply that change the

14   framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules*

15   *Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18,

16   2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no

17   longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*,

18   2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

19   Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior

20   administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b),

21   416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior

22   administrative medical findings include supportability, consistency, relationship with the claimant

23   (including length of the treatment, frequency of examinations, purpose of the treatment, extent of

24   the treatment, and the existence of an examination), specialization, and "other factors that tend to

25   support or contradict a medical opinion or prior administrative medical finding" (including, but

26   not limited to, "evidence showing a medical source has familiarity with the other evidence in the

27   claim or an understanding of our disability program's policies and evidentiary requirements").  20

28   C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

6

1     Supportability and consistency are the most important factors, and therefore the ALJ is

2   required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2),

3   416.920c(b)(2).  Supportability and consistency are explained in the regulations:

4           (1) Supportability. The more relevant the objective medical evidence
            and supporting explanations presented by a medical source are to
5           support his or her medical opinion(s) or prior administrative medical
            finding(s), the more persuasive the medical opinions or prior
6           administrative medical finding(s) will be.

7           (2) Consistency. The more consistent a medical opinion(s) or prior
            administrative medical finding(s) is with the evidence from other
8           medical sources and nonmedical sources in the claim, the more
            persuasive the medical opinion(s) or prior administrative medical
9           finding(s) will be.

10
11  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to,

12  explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

13  However, when two or more medical opinions or prior administrative findings "about the same

14  issue are both equally well-supported ... and consistent with the record ... but are not exactly the

15  same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3)

16  through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

17          The Ninth Circuit has additionally held that the new regulatory framework displaces the

18  longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and

19  convincing" reasons for rejecting a treating or examining doctor's opinion.  *Woods v. Kijakazi*, 32

20  F.4th 785, 787 (9th Cir. 2022).  Nonetheless, in rejecting an examining or treating doctor's

21  opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by

22  substantial evidence.  *Id.* at 792.  This means that the ALJ "must 'articulate ... how persuasive'

23  [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain

24  how [he or she] considered the supportability and consistency factors' in reaching these findings."

25  *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

26          The record in this case reveals that in 2019, Ramu Thiagarajan, M.D. completed a "stroke

27  medical source statement," opining that Plaintiff could walk 10 minutes without rest; sit one and a

28  half hours at one time before needing to get up; stand for 15 minutes before needing to sit down

1  or walk around; sit and stand/walk for about 2 hours total in an 8-hour working day; need to shift

2  positions at will from sitting, standing or walking; take unscheduled breaks every hour for 10-15

3  minutes at a time to sit; elevate legs to 30 degrees 50% of an 8-hour working day if prolonged

4  sitting; must use a cane or other assistive device; frequently lift and carry 10 pounds; occasionally

5  lift and carry 20 pounds; never climb ladders; rarely twist or climb stairs; occasionally stoop or

6  crouch; grasp, turn and twist objects 100% of an 8-hour working day; use fingers for fine

7  manipulations 50% of an 8-hour working day; reach in front of his body for 90% of an 8-hour

8  working day; reach overhead for 25% of an 8-hour working day; avoid even moderate exposure

9  to extreme heat; is capable of low stress work; is likely to be "off-task" 20% of a typical

10  workday; impairments are likely to produce good days and bad days; and he is likely to be absent

11  from work about four days per month on average.  (AR 948-52).  The ALJ found this opinion was

12  unpersuasive.  (AR 25).

13         First, as to supportability, the ALJ found that

14         in support of his opinions, Dr. Thiagarajan cites to the following:
           balance problems, poor coordination, weakness, slight paralysis,
15         unstable walking, fatigue, vertigo/dizziness, and difficulty
           remembering.  However, these medical signs are not documented in
16         his treatment notes.  Dr. Thiagarajan examined the claimant on four
           occasions: July 28, 2017; September 7, [2017] ; May 8, 2018; and
17         August 14, 2018.  During those exams, the only abnormality with
           which the claimant presented was an obese body habitus.
18         Accordingly, Dr. Thiagarajan advised the claimant to engage in
           regular exercise and manage his diet, and prescribed him Neurontin.
19         Thus it appeared Dr. Thiagarajan based his opinion upon the
           claimant's subjective complaints rather than upon objective medical
20         evidence.  There is no logical nexus between the clinical findings
           observed and treatment recommended by the treatment provider and
21         his opinion; therefore, the opinion is unsupported.

22  (AR 25 (citing AR 682-83, 685-86, 941-42, 945-46); *see Tommasetti*, 533 F.3d at 1041 ("An ALJ

23  may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-

24  reports that have been properly discounted as incredible."); *Stephens v. Kijakazi*, 2023 WL

25  6937296, at *2 (9th Cir. 2023) (finding substantial evidence supported ALJ's discounting of

26  medical opinion, in part because the assessed limitations were only supported by plaintiff's

27  properly rejected subjective complaints); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

28  Cir. 2005) (finding ALJ's rejection of opinion supported by substantial evidence, including

1    discrepancy between a doctor's recorded observation and his opinion regarding a plaintiff's

2    limitations).

3         To the extent Plaintiff addresses the supportability finding, he argues that the ALJ failed

4    to consider treatment records from treatment providers other than Dr. Thiagarajan for status post-

5    stroke symptomology and general health treatment, and further contends that the "ALJ's

6    suggestion that the right hand did not know what the left hand was doing, such that the long-term,

7    treating neurological specialist somehow crafted a MSS based [on] treating the 'neurological'

8    aspects of Mr. Alfaro's status-post stroke symptomology in a vacuum, absent knowledge,

9    consideration or access to his" overall treatment records "is not a logical conclusion supported by

10   substantial evidence." (Doc. No. 21 at 27).  However, as noted by Defendant, under the new

11   regulations "the more relevant the objective medical evidence and supporting explanations

12   *presented by a medical source* are to support" the medical opinion, the more persuasive the

13   medical opinion will be.  20 C.F.R. § 404.1520c(c)(1); 416.920c(c)(1)(emphasis added).

14        Further, in support of his argument, Plaintiff cites his own subjective complaints and

15   diagnoses noted in Dr. Thiagarajan's opinion and treatment notes, including headaches, dizziness,

16   balance a "little off," neck and shoulder pain, neck and shoulder pain, joint stiffness, hip pain,

17   upper extremity weakness, muscle fatigue, lack of coordination and "jerks," and sleep disturbance

18   (AR 681, 684, 940, 948); but he fails to cite objective or clinical findings in Dr. Thiagarajan's

19   opinion, or his treatment notes, to support the assessed limitations.  Rather, as noted by the ALJ,

20   the only clinical abnormality noted by Dr. Thiagarajan was obese body habitus, and he prescribed

21   Neurontin and advised Plaintiff to engage in regular exercise and manage his diet.  (AR 22, 25

22   (citing AR 682-83, 685-86)).  Moreover, the objective medical examinations conducted by Dr.

23   Thiagarajan included findings of normal gait, normal range of motion of all muscle groups, 5/5

24   muscle strength in all major muscle groups, and normal neurological findings.  (*Id*.).  Based on

25   the foregoing, substantial evidence supports the ALJ's finding that Dr. Thiagarajan's opinion was

26   unpersuasive because there "is no logical nexus between the clinical findings observed and

27   treatment recommended by the treatment provider and his opinion; therefore, the opinion is

28

9

1    unsupported."[2] (AR 25).

2           Second, as to the consistency factor, the ALJ found Dr. Thiagarajan's opinion was not

3    consistent with the broader case record, as Plaintiff "has not presented on exam with persistent

4    abnormalities reasonably supportive of his allegations or the degree of limitation assessed by Dr.

5    Thiagarajan." (*Id.*); 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)(" The more consistent a

6    medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in

7    the claim, the more persuasive the medical opinion(s) . . . will be"); *see also Warre v. Comm'r of*

8    *Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

9    effectively with medication are not disabling for the purpose of determining eligibility for SSI

10   benefits."). Plaintiff argues the ALJ's rejection of Dr. Thiagarajan's opinion as inconsistent with

11   the broader case record is not supported by substantial evidence. (Doc. No. 21 at 25-28). In

12   support of this argument Plaintiff cites objective findings of "persistent abnormalities" in the

13   record including decreased strength and limited range of motion at the time of Plaintiff's first

14   stroke; shoulder scapular winging, tenderness to palpation in the lateral subacromial space,

15   positive Hawkin's impingement test, positive Neer's impingement test, decreased shoulder

16   strength and range of motion, and rotator cuff tear; impaired gait and noticeable limp; left knee

17   symptoms including effusion, tenderness, decreased flexion, swelling, and assistive device used

18   for walking prior to his left knee surgery for a medial meniscus tear in December 2017; edema

19   with varicose veins; limited range of motion and tenderness in lumbar spine; and moderate

20   narrowing of the L4-5 disc space on imaging. (Doc. No. 21 at 26 n. 9 (citing AR 486-87 (noting

21   "there are individuals with rotator cuff tears that have good function and little shoulder pain" and

22   do not require surgery), 491-92, 494, 504, 510, 655, 657-58, 705-10, 718, 736, 758-59, 766-67,

23

24   [2] Plaintiff argues the ALJ's reference to Dr. Thiagarajan examining Plaintiff "on four occasions" is "not a
     reason based on 'substantial evidence' to assume this RFC opinion is not supported by the totality of the
25   evidence of record as a whole, or even that it was embellished and based only on subjective
     symptomology, rather than based on her long-term, specialized knowledge and treatment of [Plaintiff],
26   status-post CVA." (Doc. No. 21 at 28). Defendant argues the ALJ did not rely on the number of treatment
     visits as a reason to discount Dr. Thiagarajan's opinion. (Doc. No. 26 at 17-18). The Court agrees. A plain
27   reading of the decision indicates the ALJ listed the four treatment visits and then, as discussed *supra*, went
     on to find Dr. Thiagarajan's opinion less persuasive because the notes from those treatment visits did not
28   support the severity of the limitations opined. (AR 25).

1    783, 893, 900-01, 1037-38, 1042, 1092, 1114)).

2         Even under the new regulations, the ALJ may not "cherry-pick" evidence in discounting a

3    medical opinion. *See Timothy P. v. Comm'r Soc. Sec. Admin.*, 2022 WL 2116099, at *9 (D. Or.

4    June 13, 2022) ("Although *Woods* made it clear that the hierarchy among physicians' opinions no

5    longer applies in this Circuit, the court did not address whether the new regulations upend the

6    entire body of caselaw relating to medical evidence… It remains true that the ALJs may not

7    cherry-pick evidence in discounting a medical opinion.").  However, a review of the ALJ's

8    decision indicates that that she did review the medical evidence and other evidence of record as

9    part of the summary of medical evidence, including abnormal findings related to Plaintiff's two

10   strokes, left knee pain, shoulder pain, and chiropractic care.  (AR 21-22).  Moreover, the ALJ

11   cited ongoing objective and clinical findings from the record that reflect consistent resolution of

12   claimed symptoms, and do not support the degree of limitation assessed by Dr. Thiagarajan,

13   including a December 2016 brain computed tomography x-ray, which showed complete

14   resolution of the intracerebral hemorrhage from July 2016; normal findings on exam in March

15   2017 aside from right shoulder strength, which resolved by May 2017 according to subsequent

16   normal examination findings of Plaintiff's upper extremity; normal findings on examination in

17   July 2017 subsequent to the second stroke; normal findings aside from left knee symptoms in July

18   2017, for which he underwent surgery and reported full range of motion by December 2017;

19   normal findings in June 2019 aside from small tremor in right upper extremity and mild decrease

20   in strength in right upper and lower extremities; normal findings aside from mild decrease in

21   range of motion and tenderness in left ankle in October 2019 after a fall; and right knee

22   tenderness after jumping off a pickup truck in November 2019.  (AR 21-22 (citing AR 544, 599,

23   681-84, 778, 882, 888, 940, 948, 1052, 1087 1095,).

24        Thus, when viewing the medical record as a whole, it was reasonable for the ALJ to

25   conclude that the severity of limitations assessed in Dr. Thiagarajan's opinion were not consistent

26   with the longitudinal treatment record, that included consistent resolution of Plaintiff's symptoms

27   and largely normal examination results. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)

28   ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

11

1  conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (ALJ

2  is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony).

3  As part of his argument regarding the medical opinion evidence, Plaintiff additionally

4  contends that the ALJ impermissibly assessed the RFC "based on her own interpretation of

5  medical data" by including greater limitations than those assessed by the state agency physicians,

6  and further "erred by failing to obtain an opinion from an examining physician source or submit

7  the updated records to an 'acceptable' medical professional for interpretation." (Doc. No. 21 at

8  29-32). In support of this argument, Plaintiff cites evidence from treatment records subsequent to

9  the most recent state agency medical opinion, including findings of right handed weakness, right

10  shoulder pain with range of motion and positive impingement sign, impaired gait, positive

11  straight leg test, pain and decreased flexion in Plaintiff's lumbar spine, and x-rays showing

12  moderate narrowing of the L4-5 disc space. (*Id*. at 30-31). Defendant argues the ALJ's

13  assessment of the medical opinions was properly supported by substantial evidence, and it is well-

14  settled in the Ninth Circuit that "the RFC finding does not need to match exactly any particular

15  medical opinion." (Doc. No. 26 at 19 (citing *Magallanes*, 881 F.2d at 753 (9th Cir. 1989)). The

16  Court agrees. The RFC assessment is an administrative finding based on all relevant evidence in

17  the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

18  In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are

19  credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be

20  affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be

21  consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc.*

22  *Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the

23  ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it

24  is the responsibility of the ALJ ... to determine residual functional capacity.").

25  Here, Plaintiff does not specifically argue that the ALJ improperly considered the state

26  agency opinions under the new regulations; nor does she identify any specific functional

27  limitations, based on the cited medical evidence, that were not properly accounted for in the

28  assessed RFC. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

12

1    2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing); *see*

2    *also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where

3    physician's report did not assign any specific limitations or opinions in relation to an ability to

4    work, "the ALJ did not need to provide [reasons] for rejecting [the] report because the ALJ did

5    not reject any of [the report's] conclusions"). State agency medical consultants opined that

6    Plaintiff could perform light work with limited right overhead reaching, and occasional kneeling,

7    crawling, climbing ramps and stairs, stooping, crouching, balancing, and climbing ladders, ropes,

8    or scaffolds. (AR 76-77, 110-12). The ALJ found the opinions were persuasive because their

9    findings were consistent with Plaintiff's longitudinal medical history and self-reported daily

10   activities, and their "findings are accompanied by detailed narratives that explain what evidence

11   the consultants relied upon when rendering their conclusions"; however, "giving some limited

12   credence to the claimant's otherwise unsubstantiated allegations, the [ALJ] found that the

13   claimant has some greater nonexertional limitations than were assessed" by the state agency

14   reviewing consultants. (AR 24). While not challenged by Plaintiff, the Court notes the ALJ's

15   finding that the state agency opinions were persuasive is supported by substantial evidence after

16   proper consideration of the supportability and consistency factors under the new regulations. 20

17   C.F.R. § 416.920c(c)(1)-(2). Thus, the Court finds no error in the ALJ's assessment of the RFC

18   as supported by the "cumulative medical and non-medical evidence." (AR 25); *see Bayliss*, 427

19   F.3d at 1217.

20          Moreover, to the extent Plaintiff argues the ALJ had a duty to develop the record based on

21   treatment records, his argument is unavailing. "The ALJ in a social security case has an

22   independent duty to fully and fairly develop the record and to assure that the claimant's interests

23   are considered," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242

24   F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))

25   (internal quotation marks omitted). This duty is "triggered when the evidence is ambiguous or

26   when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v.*

27   *Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Thomas*, 278 F.3d at 958. However, it is widely

28   held in the Ninth Circuit that "[t]he mere existence of medical records post-dating a state agency

1   physician's review does not in and of itself trigger a duty to further develop the record."

2   *Digiacomo v. Saul*, 2020 WL 6318207, at *8 (citing *Charney v. Colvin*, 2014 WL 1152961, at *7

3   (C.D. Cal. Mar. 21, 2014), *aff'd*, 647 F. App'x 762 (9th Cir. 2016)) ("[a]n updated opinion is not

4   required simply because additional medical evidence is received after State agency consultants

5   review a claimant's case."); *Cindy T. v. Kijakazi*, 2022 WL 16633010 (S.D. Cal. Sept. 23, 2022)

6   ("Because it is Plaintiff's burden to present evidence in support of her alleged disability, the mere

7   absence of a report from a treating or examining physician does not give rise to a duty to develop

8   the record.").  Here, the ALJ properly relied on prior administrative findings, as discussed above,

9   and 700 pages of medical records and treatment notes regarding Plaintiff's claimed impairments,

10   including evidence cited by Plaintiff in support of this argument.  Thus, the record was sufficient

11   for the ALJ to make a non-disability determination, and the ALJ did not err by failing to order an

12   additional opinion for "interpretation" of "updated records" where the record was adequate and

13   unambiguous.  *See LeBeouf v. Saul*, 2020 WL 5702240, at *10-11 (E.D. Cal. Sept. 24, 2020)

14   (ALJ was not required to request a consultative examination in part because the "record contained

15   what appears to be Plaintiff's complete treatment records, which supported the ALJ's finding and

16   did not present an ambiguity or inadequacy.").

17          After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes

18   that the ALJ's finding that Dr. Thiagarajan's opinion was not persuasive was supported by

19   substantial evidence after proper consideration of the supportability and consistency factors.

20          **B. Symptom Claims**

21          An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

22   subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

23   The ALJ first must determine whether there is "objective medical evidence of an underlying

24   impairment which could reasonably be expected to produce the pain or other symptoms alleged."

25   *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment

26   could reasonably be expected to cause the severity of the symptom he has alleged; he need only

27   show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572

28   F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

1       Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

2   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ]

3   gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

4   1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are

5   insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

6   undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.

7   1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a

8   credibility determination with findings sufficiently specific to permit the court to conclude that

9   the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing

10  [evidence] standard is the most demanding required in Social Security cases." *Garrison v.*

11  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

12  F.3d 920, 924 (9th Cir. 2002)).

13      Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

14  be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning

15  the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with

16  the medical evidence and other evidence in the record" for several reasons.

17      First, the ALJ found Plaintiff's "allegations are not fully consistent with or supported by

18  the medical evidence of record."  (AR 23).  Medical evidence is a relevant factor in determining

19  the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853,

20  857 (9th Cir. 2001)(an ALJ may not discredit a claimant's pain testimony and deny benefits

21  solely because the degree of pain is not supported by objective medical evidence).  Moreover, a

22  favorable response to treatment can undermine a claimant's complaints of debilitating pain or

23  other severe limitations. *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec.*

24  *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication

25  are not disabling for purposes of determining eligibility for benefits).  In support of this finding,

26  the ALJ set out, in detail, medical evidence documenting the resolution of Plaintiff's symptom

27  claims across the relevant adjudicatory period, in contradiction to Plaintiff's claims of disabling

28  limitations.  (AR 21-23).  For example, the ALJ noted the "residuals of both strokes resolved

15

1   within six months of their manifestation.  As a result, claimant has no persistent cognitive or

2   neurological deficits of the nature alleged, such as impaired memory or right-sided weakness."

3   (AR 21-23, 599 (complete resolution of intracerebral hemorrhage of the left frontal lobe), 487,

4   534, 682, 686, 942 (noting improvement with balance and weakness and advising regular

5   exercise), 946, 994, 1006, 1008, 1046, 1049, 1052 (mild decrease in right upper and lower

6   extremity strength), 1070, 1084, 1103).  Moreover, "[a]lthough unable to undergo surgical repair

7   of his right rotator cuff tear due to his hypertension, the deficits related thereto resolved within

8   two months."  (AR 23, 534, 682, 686, 942, 946, 993-94 (noting no shoulder surgery and normal

9   upper extremity strength), 1006 (normal upper extremity strength), 1008, 1052, 1074).  And the

10   "deficits caused by the left knee impairment resolved within six months of their onset.  While the

11   claimant has used a cane sporadically since, the record does not document it or any other assistive

12   [device] being a medical necessity.  That is, the claimant is not documented to have presented

13   with a chronic weakness, unsteadiness, or lack of coordination that would warrant a finding that

14   he must use a cane or other assistive device in order to work within the [RFC] described herein."

15   (AR 23, 682, 686, 888 (ceased regular use of cane), 942 (normal gait), 946 (normal gait), 1006

16   (noting full recovery after left knee surgery and no ambulation difficulties), 1008, 1046, 1049,

17   1070, 1077 (recommended exercise at least 30 minutes a day), 1084, 1103).  Finally, the ALJ

18   found Plaintiff's testimony regarding limiting medication side effects are uncorroborated by

19   objective evidence "(e.g., he has not presented as tired or lethargic consistent with his reports that

20   his medication causes significant, limiting fatigue)."  (AR 23).

21        Plaintiff argues this finding is "internally inconsistent" with the ALJ's finding that his

22   status post two strokes/cerebral infarctions, right rotator cuff ear, and status post left knee

23   arthroscopy were severe impairments at step two of the sequential evaluation, defined as having

24   had more than a minimal effect on the claimant's ability to perform basic work activities for a

25   continuous period of 12 months.  (Doc. No. 21 at 35-36).  However, as discussed *supra*, the ALJ

26   supports the RFC assessment at step four by citing evidence of improvement in Plaintiff's

27   claimed impairments across the longitudinal treatment record.  Moreover, as step two was

28   resolved in Plaintiff's favor any error at that step in the sequential analysis would be harmless.

16

1   *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch*, 400 F.3d at

2   682.  Plaintiff also argues that "[s]poradic and isolated references to 'improvements' or 'stability'

3   . . . do not constitute 'clear and convincing' reasons to reject symptomology testimony."  (Doc.

4   No. 21 at 36).  However, in support of this argument, Plaintiff relies largely on examination

5   findings during the initial treatment of Plaintiff's claimed impairments, without argument as to

6   documented resolution of those individual symptoms.  (*See id*. at n.13).  Here, the ALJ explicitly

7   recognized evidence in the record that could be considered more favorable to Plaintiff, including

8   evidence from the precise treatment records cited by Plaintiff in support of this argument, and

9   nonetheless found the severity of her symptom claims were not consistent with the documented

10  improvement in each individual claim across the treatment record.  (*See* AR 21-23).  "[W]here

11  evidence is susceptible to more than one rational interpretation, it is the [Commissioner's]

12  conclusion that must be upheld."  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

13      Second, the ALJ found Plaintiff has a "fair overall work record; however, he was

14  sporadically employed in the years immediately preceding the alleged onset date of disability."

15  (AR 23, 295).  The ALJ also noted that Plaintiff stopped working on May 27, 2016, before the

16  alleged disability onset date, "for non-medical reasons: he was laid off."  (AR 23, 303).  The

17  Court may decline to consider this issue as it was not raised with specificity in Plaintiff's opening

18  brief.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

19  Regardless, evidence of a poor work history that suggests a claimant is not motivated to work is a

20  permissible reason to discredit a claimant's testimony that he is unable to work.  *Thomas*, 278

21  F.3d at 959; 20 C.F.R. §§ 404.1529, 416.929 (prior work record can be considered in assessing

22  credibility).  In addition, the ALJ may consider that a claimant stopped working for reasons

23  unrelated to the allegedly disabling condition when weighing the Plaintiff's symptom reports.

24  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  These are clear, convincing, and

25  unchallenged reasons for the ALJ to discount Plaintiff's symptom claims.

26      Third, the ALJ cites Plaintiff's testimony that he needs assistance with household tasks

27  and is at a high risk of falling so he does not leave his house "unless [he] absolutely needs to,"

28  and found "the cumulative evidence does not establish a reasonable basis for the extreme

17

1   limitations the claimant alleged with regard to their activities of daily living. . . . The weight of

2   the evidence indicates that it is more likely than not that, to the extent the claimant's activities of

3   daily living are limited, this is due primarily to non-disability factors, such as lifestyle choices,

4   rather than being the necessary consequence of their impairments." (AR 23-24).  The ALJ may

5   consider a claimant's activities that undermine reported symptoms.  *Rollins v. Massanari*, 261

6   F.3d 853, 857 (9th Cir. 2001).  However, the ALJ here fails to cite to any activities in the record

7   that would contradict Plaintiff's reported symptom claims.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th

8   Cir. 2007).  Moreover, as noted by Plaintiff, the ALJ does not address Plaintiff's testimony that if

9   he "pushes himself" to perform daily activities, he requires elongated recovery periods due to

10  right side weakness, fatigue, pain, and balance issues.  (Doc No. 21 at 38-39; AR 52).   Thus, to

11  the extent the ALJ found Plaintiff's activities were inconsistent with his claimed limitations this

12  was not a clear and convincing reason, supported by substantial evidence, to discount his

13  symptom claims.  However, the error is harmless because the ALJ supported the consistency

14  analysis with substantial evidence, as discussed in detail *supra*.  *See Stout v. Comm'r Soc. Sec.*

15  *Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to

16  claimant or irrelevant to ALJ's ultimate disability conclusion).

17  **VIII.   CONCLUSION**

18      A reviewing court should not substitute its assessment of the evidence for the ALJ's.

19  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment

20  as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail

21  above, the ALJ properly considered the medical opinion evidence and Plaintiff's symptom

22  claims.  After review, the Court finds the ALJ's decision is supported by substantial evidence and

23  free of harmful legal error.

24      Accordingly, it is **ORDERED**:

25      1.  Plaintiff's Motion for Summary Judgment (Doc. No. 21) is DENIED.

26      2.  Defendant's Cross-Motion for Summary Judgment (Doc. No. 26) is GRANTED and

27          the decision of the Commissioner of Social Security is AFFIRMED for the reasons set

28          forth above.

1      3.   The Clerk is directed to enter judgment in favor of the Commissioner of Social

2           Security, terminate any pending motions/deadlines, and close this case.

3

4   Dated:    November 20, 2023

5                                                      HELENA M. BARCH-KUCHTA
                                                       UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28